Once again, for everyone's reference, Justice Moore has been assigned to this docket, and all of the arguments are recorded and available online, so he'll be able to hear your comments. Let's just make sure we speak up so that he has the benefit of hearing every word. Okay? Now I'll call the case of 513-0497, Illinois v. Richard Allen. Mr. Harris? Thank you, Your Honor. This is delighted to be with you. This is actually the 10th anniversary of my swearing-in, so it's fitting to celebrate. Congratulations. Not as soon as Kate, maybe, but... I think there's a swearing-in tomorrow, I think. As you mentioned, I'm Levi Harris, Assistant Defender, and I'm here on behalf of my client, Richard Allen. May it please the Court, Richard Allen's post-conviction petition was summarily dismissed at the first stage. The petition claimed that his Sixth Amendment right to counsel was violated throughout his pretrial, trial, and post-trial proceedings because the trial court did not properly admonish him before permitting him to represent himself. Thus, Mr. Allen's counsel waiver was not knowing, and he is satisfied with the low first-stage requirement to state a claim with arguable bases, in fact, at all. As I just mentioned, the bar for surviving first stage of a post-conviction claim, PC, is quite low. Not non-existent, but low. It can only be dismissed if it's frivolous or patently without merit. The Supreme Court has said in Hodges that what that means is it can't be dismissed if there's an arguable basis in law and an arguable basis in fact. Here, it is both. The arguable basis in law is that there's a Sixth Amendment right to counsel and a corresponding right to represent oneself. But the waiver of the right to counsel must be knowing and voluntary. To make sure that it's knowing, our Supreme Court requires three things, not 402, as I requires that the court tell the defendant the nature of the charge, the minimum and maximum sentence he faces, and that he has the right to counsel, and if he's indigent, counsel will be appointed by the court. Now, those admonitions are required at every critical stage, including if there's standby counsel for part of the proceedings and then that counsel is removed, which happened here, which we'll get to when I talk about the facts. So, based on that, Mr. Allen's petition has alleged an arguable basis in law. This isn't buy-in-the-sky stuff. This is pretty basic. Now, the arguable basis in fact is that when Mr. Allen asked to represent himself, he initially got standby counsel. That lasted from about December to February, I think, and then standby counsel was removed. At the time it was removed, he was never told that he had the constitutional right to counsel. In fact, I think that persists throughout. But more overtly, he was never told about this mandatory firearm add-on that he faced if convicted as charged. The state even amended the charge on the day that standby counsel withdrew, and he wasn't even told what the new charge was. So, when the court did finally advise him, right before the jury got ready to come in for jury selection, that there was this firearm add-on, the court told Mr. Allen, this is at my discretion. The state tried to correct it. Your Honor, you know, that's not our position, and that's not correct. The court said, yeah, but that's at my discretion. Mr. Allen said, well, let me just clarify. Do I face 6 to 30 years? And the state says 21 to 45. Yeah, 6 to 30. The state says 21 to 45. The court says, well, that'll be my discretion. So, Mr. Allen goes into trial representing himself, thinking that he's facing 6 to 30 years, when in fact he's facing 21 to 45, never having been told affirmatively even that he has the right to counsel. Now, the state says there's no prejudice here because he only got 30 years. He was told he could get 21 to 45. But this right case out of the First District says that the burden is not on the defendant to show prejudice. If the defendant shows no prejudice, it's only because the record shows that his waiver was knowing involuntary. We're not going to look into prejudice. In that case, the court said we would find that regardless of the sentence that he actually received, we can't say for certain that he would have perceived it that way had he known what was really hanging over his head. Finding out otherwise would mean that we leave it up to the appellate court. Nothing wrong with the appellate court, Your Honor. But we wait until appeal for the justices to sit and probe into the defendant's mind of, well, does it look like he might have perceived it this way if he had been told a different thing? And that gets really messy. The court said we're not going to do that. We would argue, we do argue, that there's no real protection in 401, no real guarantee that that waiver is going to be knowing if the court can just sort of wiggle out of, oops, I screwed up in the admonishment phase, and give a guy something less than what he was told within a range. Here, the reason that there's no prejudice or the reason the state's able to say that is, well, the state gets all the way through trial, and they don't put the firearm enhancement to the jury. That's the state's discretion. Had the state not done that, had my client gone to trial and gotten a sentence, you know, you get to sentencing, they actually pull out the statute book and look, and oh, my gosh, it is mandatory. At that point, of course, we wouldn't say my client was prejudiced, that prejudice was manifest. But it's still a... I'm not sure how it was manifest. I'm listening, but I'm having trouble. I mean, we're under the plain error rule here, right? Correct. Okay, so plain error requires us to look at this, and there has to be such a clear, obvious error that it alone threatened to tip the scales of justice against the defendant. Or, it was a clear and obvious error, so serious that it affected the fairness of the defendant's Right, Your Honor. What facts do you have? Well, first of all, we would argue that... If we concede that the admonishment was not quite right, what is the prong of the plain error that you condemn? It would be the second prong, Your Honor. Under the Wright case, which again is on appeal, but, you know, the state unhelpfully cited Maxey about a week ago, and that case also has a petition pending. And that's what I'm looking at, is Maxey. Right. Some of this stuff is going to be litigated in other courts. I believe that my client wins no matter what, but we can get to that. Well, but you don't disagree with the plain error doctrine that I just read to you. That... You know, that is a plain error doctrine. ...has been around a long time, and you don't agree on that. Correct. And Wright says that, you know, and it cites to it, I don't have the string cited that Wright itself said, this court has noted that under the second prong, an unknowing waiver of the right to counsel is such a serious error due to the right involved that prejudice will be presumed. So that's, you're getting in second prong territory there. The reason for that is, I mean, if you're getting to, well, what sentence did he get? Did he get this sentence? Did he get that sentence? That really doesn't get at what the right is. And the right is not to get a certain sentence. The right is to know what's going on when you waive your right to counsel. And so that really can't tell us that question. Did that answer your question? Not really, because I'm still trying to figure out why he was prejudiced. Well, Your Honor, our argument is that there is no requirement of prejudice. That's the second prong of plain error. If there's error, prejudice is presumed. I know, but the second prong has to be that the error is so serious it affected the Fairness and Defendant's trial, which we don't have here. But more importantly, challenge the integrity of the judicial process. Challenge the integrity of the judicial process. Right, Your Honor. And so I would put to you again that the right case and the cases that have been decided have said this falls under that. If you find the error, if you find that... If you find that there was not a knowing and voluntary and monetary... So that's a separate question. Now, if you're talking about prejudice, plain error addresses it. If Your Honor say, you know what, on this record, we believe that he knew exactly what he was getting into, then you don't have an error. You're not talking about prejudice. You're talking about error. Wouldn't we be in our position that that's what we have here? I don't think the record bears that out at all. Well, it's clear that Mr. Allen was asking questions of the court. You know, does it really mean this? And it's also clear that the court told him the wrong answer. The wrong answer. You're correct on that. I want to talk just a little bit... While Mr. Allen had standby counsel, there was no duty by the court to admonish him courtly? That's not right. Right, I mean, right. He had, even with standby counsel, the court had no duty there to make sure that the admonishment was correct. I mean, I think that the court, if it knew something happened, if it was under the correct impression, then it heard this guy's attorney affirmatively misleading him or the stand. Oh, yeah, absolutely. But... No, I mean, what we're talking about... Standby counsel is like having counsel. Right. So what we're talking about is the right to be admonished to make a knowing waiver. So as long as you have the counsel there, you don't have to have the admonishment. Right. So it's the pro se issue. Right. Okay. Right, that's entirely it. Does y'all want two or one? I don't know. Twelve seconds? Go ahead. The state says that there's substantial compliance that can sort of bolster what the trial court does if basically a defendant went through the ringer before or there's some degree of legal sophistication. I have a few responses to that. Well, let's hear them on rebuttal. Okay. You can see... You're fine with me, Your Honor. I'll take a breath. I'll be back. Okay, take a breath. You do agree the minimus needs to be corrected to reflect the time in custody? I think we're in agreement on that. State concedes that point as well. Okay, good. So that's one thing we know. All right. Your Honors, counsel, may it please the Court, for the benefit of Justice Moore, Kelly Stacy, if you're in on behalf of the state. In the defendant's direct appeal, which I believe was before this Court in 2010, the defendant argued that he was subjected to extended term sentencing when he was sentenced to 30 years in prison for his part in an armed robbery. When this Court affirmed the sentence on the direct appeal, the Court stated at paragraph 33 of the Rule 23 order, it is clear that the defendant was not subjected to a double enhancement, but rather was sentenced to 30 years imprisonment, which is within the range of the 6 to 30 year sentence the Court may impose for an armed robbery. In this appeal, in his post-conviction petition, the defendant has added a claim that he was not properly admonished about the sentencing range because he believes there was a mandatory minimum in this case. And due to what he believes is an incorrect admonishment, there was no compliance with Rule 401A. This Court should find that the trial court properly dismissed the post-conviction petition in this case. The defendant argues that although he failed to properly preserve his claim of error, this Court can reach the issue via the plain error doctrine. But where there is no error, there can be no plain error. And the record is clear here. The defendant was not subjected to extended term or any enhanced sentencing whatsoever. The defendant was admonished. He could be sentenced to 6 to 45 years in prison. Again, in his reply brief, he argues that he was subjected to a mandatory minimum of 21 years. This claim is rebutted by the record. The defendant was found guilty of armed robbery by accountability. Under the statute for a mandatory minimum of 21 years, the state had to prove defendant was armed with a firearm. Because we've got a finding of guilt by accountability, the reason there was accountability is the defendant wasn't the one with the gun. The co-defendant was. So he was never subjected to that mandatory minimum. And in fact, the defendant himself, when he was proceeding pro se, even told the court, well, I wasn't the one who had the gun. So the defendant knew that the class X sentencing range was 6 to 30 years. The incorrect admonishment would have been 6 to 45 years. Ms. Stacey, though, the case was dismissed at the first stage. That's correct. And the threshold for going to the second stage is so low, it's just a constitutional claim. Where do you think we would look to say this was just patently frivolous? Where would you direct us? Well, Your Honor, in the case of People v. Coleman, it's a 1998 Illinois Supreme Court case. Ricky Coleman? Pardon? Is that Ricky Coleman? No, Your Honor, I am not certain of the first name of that defendant. Okay. Perhaps that's something I don't know. That's a disputed record. Oh. Well, in that case, the court said at first stage, it is proper for a trial court to dismiss a pro se, post-conviction petition where the court filed and any subsequent action taken by an appellate court rebuts the allegations in the petition. The appellate court opinion, I believe it was Justice Stewart that authored that opinion. I believe Justice Chapman, you might have been on that panel. It's rebutted by the Rule 23 order in this case, and this court reviewed all the admonitions in this case. This was not raised on direct appeal. Because it's a matter of record, because we've got a transcript that shows what exactly was admonished on that day, it's a matter that this court can look at and determine whether or not there were proper admonishments. It's also an indication that because it's a matter of record, it could have been raised on direct appeal, and it was not. So, this court should find there was substantial compliance with Rule 401. Defendant was told he was facing, in the ban for back and forth between the court and defendant, that he was facing 6 to 45 years. He was actually facing 6 to 30. He was sentenced below the stated maximum, and under the case law, People v. Pike, it's a 2016 First District case cited in the state's brief, no prejudice arises where the sentence is below the maximum defendant has been advised. And, again, this is especially relevant here because the defendant knew he was charged with armed robbery. He filed a motion to suppress and mention the charge within that motion. And he also knew that for Class X sentencing, he was subjected to 6 to 30 years in the Department of Corrections. Finally, the defendant represented himself in four of his last felony trials. He actively participated in his own defense. He made all sorts of objections. He filed, I believe, 24 motions in the case. In this case? In his trial, yes. I believe most of those were post-trial motions. But he also called 12 of his own witnesses. Again, he understood the sentencing guidelines. He was convicted of 15 felonies from 1989 to 2007. So he was familiar with the criminal justice system. Based upon all of this, the court should find, or the state respectfully asks you to find, to affirm the trial court's judgment. And if there are no questions, I will close here. Thank you, Your Honor. Thank you. Mr. Andrews? No. Your Honor, let me address part of what counsel said by getting to what I was going to talk about. I just anticipated this. Now I can reply. The state said that there was substantial compliance in this case where my client filed all these motions, he called all these witnesses and everything. There are several problems with that. First, those things, looking at how legally sophisticated the client might be or how much experience he has with the criminal justice system. Our Supreme Court, in one of the two Johnson cases that the state cited in its brief, in La Flore, in the second district, in the Wright case, all those cases say if you're asking about that, you're still really trying to get at whether the defendant had actual knowledge of what he was facing. So we don't just get to give him a pass and let the court off the hook because, well, this guy has had 15 felony convictions. The question is, was he educated in those felony convictions about the kind of thing that we're talking about here? Did he have actual knowledge? Second, I should say that the petition for leave to appeal in the Massey case, which the state has cited, gives it this very thing. It says this isn't something we should be looking at, how legally sophisticated he was or whatever. I don't know whether the court's holding that until the Wright decision comes down, but in any event, that's being litigated. There are public policy reasons for not looking at this. Basically a rule that says the more times you've been to prison, the more times you've been to court, the smarter we're going to presume that you are, which seems silly to me, having spent a lot of money to get as smart as I am. You can see where it got me. The fourth reason that this legal sophistication argument is bad is that even if this court agrees that that's a permissible thing that we should be looking at, it's still a factual question. How sophisticated was this defendant? How many times has he been to court? How many motions did he do? Whatever. To the extent that that's not fleshed out here, talking about how many convictions he has, what they're for, that's a factual question that should be in the trial court at a post-conviction proceeding. I would also say that this defendant, the comedian Jerry Flower, I think, said that some people are educated beyond their intelligence. This is a guy who I love as my client. He files a lot of motions. He has a very florid and vivid vocabulary and imagination. He's not a legally sophisticated man. I think if Your Honors peruse the record, you will see that. Briefly, getting back to what counsel said, she noted that this claim was raised on direct appeal. We concede that, obviously. That's why we're talking about plain error. But my client was also prosaic on direct appeal, too. So the errors that were there, whatever he suffered from his lack of sophistication, followed him into appellate court. Counsel's talking about, well, he didn't get an in-hand sentence. Nobody's here talking about an in-hand sentence. We're not talking about some failure to notify under 111.3c of the Code of Criminal Procedure. What we're talking about is 401. 401, though, says the nature of the charge. Then what you're arguing, the minimum and maximum, he has a right to counsel, which he clearly knows. I mean, he's got standby counsel. They go through this. I want an attorney. I want standby. No, I don't want an attorney. So that seems to be well satisfied. And the last part of that is there has to be a transcript. This has to be done in open court. So you're arguing only the minimum and maximum sentence. We're mostly talking about that. And again, to the extent counsel was talking about, well, legal sophistication, he's been through the wringer. That's only useful insofar as it bears on, did this guy have actual knowledge of the minimum and maximum he was facing? Did he have actual knowledge of what was going on under 401? In this case, we have affirmative evidence that he did not have that, because he asked the court repeatedly, and the court repeatedly told him the wrong thing. The state says, well, he was never facing 21 to 45. I disagree with that. I think you can get this ad on even by accountability. That was a brief, I don't think, so I don't know why we're talking about it. But even if that's true, even if it were true that he never could have gotten 21 to 45, then he was affirmatively misled in the other way by telling me he was facing something higher than what he could get. So he was still actively misled. Your Honor, I think that's all I've got. But I'm happy to stay here all day and answer questions. We're happy that you don't. At least, am I speaking for you as well? Thank you so much. We appreciate your comments in this case. You're both very passionate about your positions. But this matter will be taken under advisement, and we'll issue an order in divorce. Thank you for coming today. You're staying? Yes. Ms. Stacy, we're going to call the case.